UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
DAVID PAUL READ,

                          Petitioner,                         **REPORT AND**
                                                              **RECOMMENDATION**
          -against-                                           13 Civ. 6962 (KMK)(PED)

SUPERINTENDENT M. THOMPSON,

                          Respondent.[1]
-----------------------------------------------------X

TO THE HONORABLE KENNETH KARAS, United States District Judge:


## I. INTRODUCTION

On September 24, 2010, a Rockland County jury convicted petitioner on charges of

Aggravated Criminal Contempt (New York Penal Law ("Penal Law") § 215.52[1]), Criminal

Contempt in the First Degree (Penal Law § 215.51[b][v]), and Assault in the Third Degree

(Penal Law § 120.00[1]). The conviction stemmed from a July 31, 2008 incident, during which

petitioner struck his wife, Michelle Surdak Read, in the mouth, in violation of an order of

protection which had been issued by the Town of Clarkstown Justice Court. On December 15,

2010, petitioner was sentenced as a second felony offender to concurrent prison terms of three

and one-half to seven years on the aggravated contempt charge, two to four years on the first-

degree contempt charge, and one year on the third-degree assault charge. At the same

sentencing hearing petitioner also received a consecutive two to four year term which was

---

[1] Although the Petition indicates that the respondent is Superintendent M. Graziano, the
Clerk of the Court has amended the caption to reflect the substitution of Mr. Thompson as
Superintendent of Collins Correctional Facility, pursuant to Rule 25(d) of the Federal Rules of
Civil Procedure and petitioner's request. (Dkt. 27-28).

imposed pursuant to a separate conviction.[2]  Petitioner is currently incarcerated at Collins

Correctional Facility in Collins, New York.

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  This petition is before me pursuant to an Order of Reference

dated July 12, 2013.  (Dkt. 9).  For the reasons set forth below, I respectfully recommend that

your Honor deny the petition in its entirety.

## II. BACKGROUND[3]

A. Indictment and Pre-Trial Proceedings

Petitioner was charged under Indictment No. 424-08 by a Rockland County grand jury

with aggravated criminal contempt, first-degree criminal contempt, and third-degree assault.   On

December 17, 2008, the County Court granted petitioner's motion to dismiss the indictment, but

the indictment was reinstated on appeal.  See People v. Read, 71 A.D.23d 1167, 896 N.Y.S.2d

912 (2d Dept. 2010).

B. Evidence at Trial

On August 30, 2006, Justice Victor J. Alfieri, Jr., Town of Clarkstown Justice Court,

issued a three-year order of protection directing petitioner to "[r]efrain from assault, stalking,

harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or any

---

[2]  On August 17, 2010, a Rockland County jury convicted petitioner of criminal
contempt, Indictment No. 261-09, arising from an April 27, 2009 incident involving the same
victim.  The two cases were consolidated for purposes of sentencing and appeal.  Petitioner filed
a separate habeas corpus petition, docketed as Read v. Thompson, 13 Civ. 3661 (KMK)(PED),
attacking his convictions from No. 261-09, the later-filed, earlier-tried case.  That petition is
analyzed in a separate Report and Recommendation.

[3]  Unless otherwise indicated, the information within this section is gleaned from the
instant petition (Dkt. 2) and respondent's Memorandum of Law and Exhibits ("Resp. Opp.")
(Dkt. 13).

criminal offense" against Michelle Surdak Read.  (Tr. 9/20/10: 140, 142)[4].

On the afternoon of July 31, 2008, Paula Washington, who rented an apartment to petitioner and Michelle, heard the Reads arguing in their apartment from her kitchen in Pomona, New York.  (Tr. 9/20/10: 3, 13-18).  The Reads had lived in Washington's downstairs apartment for four months by that time.  (Id. at 17).  Washington recognized their voices and was able to clearly hear the argument because she was "directly above them" and "[i]n terms of sound transmission in [the] house, all the public spaces are basically one space."  (Id. at 17-18). Washington testified that she "heard some verbal abuse on David's part," followed by Michelle's "scream of fear, terror, [and] pain" and "the sound of fist on flesh," which Washington demonstrated by "a motion with [her] hands."  (Id. at 18-19).  Washington then observed Michelle run up the stairs into Washington's apartment "like somebody running for her life.  (Id. at 21).  Michelle had "some kind of liquid coming out of every orifice of her face," looked "terrible," and was "bleeding [and] crying."  (Id.).  As Michelle bolted up the stairs toward Washington, she said "Paula, I want you to be a witness."  (Id. at 21).

At Michelle's request, Washington called 911.  (Id. at 22, 32).  Michelle locked herself in her car in front of the house, where she told Washington that she felt safer, and waited for the police.  (Id. at 33, 35). Haverstraw Town Police Officer Joseph Bertolino arrived a few minutes later, and observed that Michelle "had blood on her shirt and on her face," "appeared to be emotionally and physically distresed and hysterical," and she "was crying" and had "a laceration on her lip."  (Id. at 134, 136).  Michelle told Officer Bertolino that she got "into a verbal dispute with her husband" during which he "kicked her in her ass . . . cornered her and choked her. ., and

---

[4] Hereinafter, all citations to "Tr. ___" refer to the state court transcript.  (Dkt. 14).

then . . . punched her in the face." (Id. at 137).  After speaking with Washington and petitioner, Officer Bertolino handcuffed petitioner and placed him into custody in the back of the poatrol car.  (9/20/15: 138-39).  Haverstraw Police Department Sergeant Kenneth Beyer arrived after Officer Bertolino arrested petitioner, and observed that Michelle was "still somewhat hysterical," "crying, and . . . bleeding from the mouth area."  (Tr. 9/22/10: 71, 74-75).  Police Officer Scott Iovino arrived at the scene and followed Officer Bertolino and petitioner to the police station.  (Tr. 9/20/10: 80).  On the way to the station, Officer Bertolino was advised of the "refrain from order of protection in effect."  (Tr. 9/20/10: 140, 142).  Later that day, Michelle completed a deposition for the domestic incident report.  (Tr. 9/20/10: 142; Tr. 9/22/10: 57).

C.  Verdict and Sentence

Petitioner was convicted of all charges on September 24, 2010.  (Tr. 9/24/10: 3-6).  On December 15, 2010, petitioner was sentenced as a second felony offender to concurrent prison terms of three and one-half to seven years on the aggravated contempt charges, two to four years on the first-degree contempt charge, and one year on the third-degree assault charge.  As indicated above, petitioner also received a consecutive two to four year term as a result of a separate conviction.  (Tr. 12/15/10: 48-49).

D.  Petitioner's Purported § 440 Motion

In March 2015, petitioner submitted an affirmation addressed to the Chief Clerk of the Rockland County Supreme Court claiming that he had submitted § 440 motions in both this case and in the case which is the subject of his other habeas petition and requesting copies of the purported motions.  (Dkt. 31).  He later submitted a letter to this Court attaching what he claims to be "the Rockalnd [sic] County Courts [sic] letter that is on my Habeas Petition as an a Exhibit. Please be referred to this as my 440.10, 440.20 Motion."  (Dkt. 32).  He provided a copy of a

letter dated October 25, 2010 from the Rockland County trial judge's law secretary which states: "I am returning your recently-submitted papers to you.  In addition to the fact that your papers are deficient and the motion premature (you have not yet been sentenced), Judge Nelson will not entertain any pro se motions while you are represented by counsel."  (Id. at 2).  Petitioner has submitted this letter without the underlying (but rejected for filing) § 440.10 motion.  The law secretary's letter does not specify whether it is relates to a § 440.10 motion or some other motion entirely.  Petitioner has also asked this Court to expand the record to include the motion.  (Id.). In addition, petitioner has submitted pages from Rockland County Court dockets relating to Indictments 424/08 and 261/09, as well as one page of the federal court docket in this case. (Dkt. 33).  None of these documents establish whether petitioner in fact filed, or attempted to file, a § 440.10 motion, nor do they shed light on what claims may have been presented therein.

There is no indication that petitioner sought any form of relief from the Appellate Division with respect to any such motion.

E.  Direct Appeal

Petitioner, through counsel, timely appealed both his convictions to the Appellate Division, Second Department.  As pertinent to the instant petition, petitioner presented the following claims: (1) the trial court erred in denying petitioner a missing witness charge with regard to the complainant; (2) because all of the evidence was circumstantial, the court erred in refusing counsel's request for a moral certainty charge; and (3) the court should have granted the defense motion for a mistrial, based on derisive comments in the prosecutor's summation.  (Exh. A).[5]

_____

[5] Hereinafter, all citations to "Exh. ___" refer to exhibits collected in Respondent's Record of Exhibits.  (Dkt. 13.2)

The Second Department affirmed petitioner's conviction on July 11, 2012.  People v. Read, 97 A.D.3d 702, 947 N.Y.S.2d 614 (2d Dep't 2012).  As pertinent to the instant petition, the Appellate Division held:

> On appeal, the defendant contends that the trial court erred during both trials in denying his request for a missing witness charge with respect to his wife, who did not testify in either trial. . . . [T]he trial court properly denied the defendant's request in both instances, as the record reflects that his wife was not under the People's control (see People v. Monroe, 49 A.D.3d 900, 901, 854 N.Y.S.2d 472; People v. Royster, 18 A.D.3d 375, 375–376, 795 N.Y.S.2d 560; People v. Coleman, 306 A.D.2d 941, 942, 760 N.Y.S.2d 797).
>
> With respect to the trial under Indictment No. 424/08, the defendant contends that the court erred in failing to provide a moral certainty charge. This contention is unpreserved for appellate review (see People v. Finkelstein, 75 A.D.3d 652, 653, 904 N.Y.S.2d 674; People v. Wynn, 198 A.D.2d 136, 603 N.Y.S.2d 848; People v. Troy, 162 A.D.2d 744, 557 N.Y.S.2d 134), and is also waived (see People v. Cleophus, 81 A.D.3d 844, 846, 916 N.Y.S.2d 624; People v. Boone, 269 A.D.2d 459, 459–460, 704 N.Y.S.2d 265).  In any event, a moral certainty charge was unwarranted in this case, because both direct and circumstantial evidence were presented to establish the defendant's culpability (see People v. Barnes, 50 N.Y.2d 375, 379–381, 429 N.Y.S.2d 178, 406 N.E.2d 1071; People v. Hinton, 285 A.D.2d 476, 476–477, 728 N.Y.S.2d 177; People v. Wynn, 198 A.D.2d at 136, 603 N.Y.S.2d 848; People v. Troy, 162 A.D.2d at 744, 557 N.Y.S.2d 134).
>
> The defendant's contention, also with respect to the trial under Indictment No. 424/08, that certain statements made by the prosecutor during summation constituted reversible error is unpreserved for appellate review. Defense counsel either did not object to the remarks at issue or made a general one-word objection, and his motion for a mistrial, made after the completion of summations, was untimely (see People v. Malave, 7 A.D.3d 542, 775 N.Y.S.2d 588; People v. Davis, 272 A.D.2d 408, 707 N.Y.S.2d 906; People v. Bruen, 136 A.D.2d 648, 649, 523 N.Y.S.2d 883). In any event, the contention is without merit (see People v. Thompson, 81 A.D.3d 670, 672–673, 916 N.Y.S.2d 151, lv. granted 18 N.Y.3d 998, 945 N.Y.S.2d 653, 968 N.E.2d 1009; People v. Franklin, 64 A.D.3d 614, 615, 883 N.Y.S.2d 95; People v. Diaz, 59 A.D.3d 459, 460, 872 N.Y.S.2d 533).

People v. Read, 97 A.D.3d 702, 703, 947 N.Y.S.2d 614, 616 (2012).  Petitioner, through counsel, timely submitted a leave application to the New York Court of Appeals.  As pertinent to the instant petition, the leave application presented the same issues as were raised on direct appeal.

(Exh. E).  The court denied leave to appeal on September 28, 2012.  <u>People v. Read</u>, 19 N.Y.3d

1028, 978 N.E.2d 113 (2012).  Petitioner did not seek a writ of *certiorari* to the United States

Supreme Court.

F.  <u>Habeas Petition</u>

Petitioner timely[6] filed a petition for a writ of habeas corpus on September 30, 2013.

(Dkt. 2).  The petition includes: the petition form (Dkt. 2) which enumerates four grounds upon

which petitioner seeks relief (Dkt. 2 at 1-6); 25 typewritten pages, elaborating on some of those

grounds and adding an additional claim (Dkt. 2 at 7-32); a copy of the March 30, 2010 Second

Department order reinstating petitioner's indictment (Dkt. 2 at 33); a typewritten document

entitled "Habeas Corpus Petition Part one of Exhibit (A) (Dkt. 2 at 34-44); and a handwritten

document labeled "Argument," in which petitioner further elaborates on some of those grounds,

and introduces ineffective assistance of trial counsel claim (Dkt. 2 at 45-47); and another

handwritten document labeled "Memorandum of Law" in which petitioner lists seventeen

exhibits "used as evidence and supporting facts."  (Dkt 2 at 48-58).[7]

_____

[6] <u>See</u> 28 U.S.C. § 2244(d)(1).

[7] To his petition, petitioner attaches the following exhibits: 1) A certificate of conviction
from a June 22, 2006 conviction for criminal contempt; 2) a Declaration of Delinquency dated
August 2, 2007 and signed by Hon. Scott B. Ugell of, Judge of the Clarkstown Justice Court; 3)
an Order to Convert Fine/Surcharge/Restitution/ Civil Judgment, signed by Judge Ugell on
January 30, 2007; 4) a copy of the Order and Conditions of Probation signed by the Honorable
Victor J. Alfieri Jr, of the Clarkstown Justice Court, signed June 30, 2006; 5) a Violation of
Probation letter sent by Probation Officer Thomas Rooney to the Clarkstown Justice Court,
reporting that, among other violations, petitioner had absconded and was arrested multiple times;
6) a D/V Information report signed by Trooper Paul Woitaszek on May 19, 2006, accusing
petitioner of violating a temporary order of protection by "slam[ming] Michelle B. Surdak-
Read's head on the steering wheel causing bruising and a bump to Michele's head" while on the
highway; 7) a D/V information form signed by Ms. Read on the same date, stating that while she
was driving, "David put his hand on the back of [her] head and slammed [her] forehead against
the steering wheel;" 8) an April 26, 2006 order of protection issued by the Justice Court of the

The Court reads the petition as seeking habeas review of the following claims:

(1) the court erred in not delivering a missing witness charge to the jury;

(2) the court erred in not delivering a moral certainty charge to the jury;

(3) the prosecutor engaged in misconduct during summation;

(4) the order of protection that petitioner was convicted of violating was invalid;

(5) trial counsel was ineffective for failing to request a mistrial based on a purported incident during trial; and

(6) the trial court improperly permitted a witness to demonstrate what she described as a "fist on flesh" sound.

G. <u>Post-Petition Proceedings</u>

Petitioner submitted an "Acknowledgment of Appearance, and Request for Extension of Time by Attorney" in December 2013, imprecisely docketed as a "Letter Motion for Extension of Time." (Dkt. 10, 12). In that letter, petitioner expressed concern that the Rockland County District Attorney would "redact portions/ or fail to enclose every proceeding entailed related to both indictment 424-08 and 261-2009." (Dkt. 10 at 1). Petitioner specifically requested ten documents and stated that the "true potential of his merits for his habeas petition relies on the disclosure of all related transcripts from variouse [sic] hearings." (<u>Id.</u> at 2). Among the ten documents petitioner requested were the "hearing for Ind. # 424-2008 before Cathern [sic] M.

_____

Town of Haverstraw; 9 – 10) jail booking forms; 11) the August 30, 2006 Order of Protection signed by Judge Alfieri; 12) a May 25, 2006 Order of Protection signed by Judge Alfieri; 14) a good behavior allowance form; 15) an Order to Produce petitioner dated March 26, 2008 and signed by Judge Ugell; 16) a Rockland County Good Behavior Allowance Form dated January 20, 2008; and 17) a Standard Local Jail Commitment Order ordering petitioner to be sentenced to imprisonment, dated January 28, 2008 and an Order to Produce petitioner dated January 24, 2008. Petitioner also attaches a copy of his Reply Brief on appeal to the Second Department the Brief on Appeal, the Second Department's decision affirming the judgment, and the New York Court of Appeals's Order denying leave to appeal. (Dkt. 2 – 2.1).

Bartlett Rockland County Supreme Court. Dated December 18th 2008," the "First Appeals Brief by D.A.. 2010," "Second Appeals Brief by D.A.. 2010," "Trial 2010. Both Ind. 424-2008, 261-2009," "Attorney Genral [sic] Integrity Beuro [sic]. '2010' Report," and "F.B.I. David Hardy.. 2010. Report." (Id. at 3).[8]

Petitioner submitted a document entitled "Notice to court of my open case's [sic]" which was docketed on January 14, 2014, informing the Court of the status of two of petitioner's other pending cases. (Dkt. 11).

Respondent's answer was timely filed on January 30, 2014, along with the state court trial and sentencing transcripts. (Dkts. 13-14).

The following day, petitioner filed an "Acknowledgement [sic] of the Judges [sic] Orders for Dkt. # 10," which was the "Acknowledgment of Appearance, and Request for Extension of Time by Attorney" that the Court terminated. (Dkts. 10, 12, 16, 17). Petitioner acknowledged receipt of the Court's order and wrote: "Furthermore, I do understand that the request under Rule 23(c) will be dismissed. I did'nt [sic] understand the exact legality of the motion I have written. I was in hope of being allowed this written motion that I discovered throughout my research of the federal rules. Im [sic] sorry if I have waisted [sic] any of your time with this. I just did'nt [sic] know the facts needed to apply such written motion." (Dkt. 16-17). Additionally,

---

[8] Petitioner attached a number of documents to this letter, including: a November 9, 2010 letter from the FBI in response to a FOIA request submitted by petitioner; an article from the Rockland Journal News reporting the resignation of Officer Michael Lourenso, the arresting officer in Indictment No. 261-09; a response from the State Attorney General to information petitioner provided to the Public Integrity Bureau in a 2010 complaint; statements from Rockland County Justice Court Chief Clerk Candyce Draper certifying the authenticity of unnamed copied documents in petitioner's case; what appears to be a cover page of a December 18, 2008 transcript from a Rockland County Supreme Court hearing; and what appears to be a log of appearances at the Haverstraw Town Court. (Dkt. 10)

petitioner informed the Court of developments in his civil rights action.  (Id.)

In February 2014, petitioner submitted a letter stating that respondent had not filed their answer and requesting Court intervention.  The Court denied this request, as respondents filed a timely answer on January 30, 2014.  (Dkt. 18).

Petitioner submitted a reply, docketed February 18, 2014, in which he faults respondent for failing to provide adequate transcripts in violation of Rule 5 of the Rules Governing Section 2254 and 2255 Cases in the United States District Court ("2254 Rules").  (Dkt. 19).  Rule 5 of the 2254 Rules provides that the answer must indicate "what transcripts (of pretrial, trial, sentencing, or post-conviction proceedings) are available" and must "attach to the answer parts of the transcript that the respondent considers relevant."  (2254 R.5).  In this case, respondent provided trial and sentencing transcripts.  (Dkt. 14).  Petitioner does not hint at any proceedings he claims to have happened that would bear on his habeas petition and in fact, states that he was "never afforded a prtiral-hearing [sic] prior to Trial in 2010."  (Dkt. 19 at 2-3).  Though petitioner argues at length that documentation regarding the dismissal and reinstatement of petitioner's indictment should have been included in respondent's answer and would have somehow demonstrated exhaustion of petitioner's habeas claim, such information is neither required by Rule 5 nor reasonably claimed by petitioner to shed any light on the trial-based claims presented in his habeas petition.  Additionally, petitioner reasserts that the "order of protection was a legal nullity of law," in violation of "the fourteenth amendment due process clause [which] prohibits deliberate use of perjured testimony or falsified evidence by the prosecution."  (Id. at 7).

Finally in his reply, petitioner makes a cryptic reference to a 440 petition, stating that "counsel from pro se office Susan Neptune fowarded [sic] my 440.10 to Hon. Nelson because I

accidently [sic] mailed it to the U.S.D.C..  Thus further support of my exhausting state administrative remedies," but does not provide any indication that it was actually filed.  (Id. at 8).  Though it is possible that petitioner refers to the phantom 440 motion that is discussed on page 4-5, supra, the record contains no indication that the state court adjudicated any 440 motion in conjunction with this indictment nor, if it had, that petitioner sought leave to review any denial of that motion.  On February 20, 2014, petitioner filed a document entitled "Submission of Evidence" stating that he "took [the] liberty to enclose tangible evidence of petitioner's lay-person efforts to give a [supplemental] brief to the appella[te] court."[9]  (Dkt. 20).  On March 10, 2014, the Court ordered that petitioner's habeas application was fully submitted and directed the parties "not to file additional briefing, evidence, or other documents without first seeking, and being granted, leave from this Court to do so."  (Dkt. 21).

H.  Petitioner's Additional Communications With the Court

Petitioner has submitted additional materials and request to the Court, both before and after being directed not to do so without leave.  On March 18, 2014, the Court denied a letter request dated March 13, 2014 entitled "petitioner request for production of trial transcripts,"

---

[9]  The submission includes documents pertaining to both this case and Indictment No. 09-261, which is the subject of petitioner's other habeas petition.  The documents attached that relate to the instant petition are:  a November 7, 2011 letter from the Rockland County District Attorney Appeals Bureau to the Second Department enclosing sealed grand jury minutes, which petitioner received without the enclosure; a March 21, 2011 Decision and Order granting leave to prosecute an appeal of this case and assigning appellate counsel, ordering that the trial court stenographer file transcripts of related hearings, and unsealing any sealed files to allow assigned counsel access to the record; a supplemental brief dated December 31, 2011 to the Appellate Division; a letter dated December 22, 2011 to assigned appellate counsel John Lewis requesting that he send petitioner trial minutes, raising concerns about the lights accidentally being shut off in the court room during his trial and about the validity of the restraining order, offering to write a supplemental brief, and requesting records from the Dunaway and Huntley hearings (presumably in the other indictment); and a January 9, 2012 letter to the Second Department regarding the his assertion that the lights were turned off his trial. (Dkt. 20).

requesting additional records and discovery. (Dkt. 22). On September 17, 2015, petitioner filed a document entitled "Discovery of Newly Discovered Evidence," to which he attaches a September 16, 2010 Decision from the Rockland County Court authorizing defense counsel to employ an investigator in this case, the November 18, 2009 notice of appeal of the Rockland County Court's Decision and Order granting defendant's motion to suppress evidence in Indictment 09-261, and that October 28, 2009 hearing decision. (Dkt. 37). On September 23, 2015, petitioner filed the transcript from his sentencing, along with a letter stating, "There may be tangible evidence. My preserving my constitutional rights. This came to me as newly discovered evidence. I wish to protect any rights that were not documented to this Court." (Dkt. 38). Petitioner has also telephoned chambers relentlessly and has written to various District Court personnel seeking updates on the status of his petitions. (Dkts. 23, 24, 26, 30).

Petitioner filed with the Court of Appeals petitions for writs of mandamus with regard to both habeas petitions; on September 21, 2015, the Second Circuit denied petitioner's mandamus petitions without prejudice to renewal if the District Court fails to take action within thirty days. (Dkt. 36).

I. Related Cases

In addition to his other habeas petition, Read v. Thompson, 13 Civ. 3661 (KMK)(PED), petitioner has several additional actions in this district relating to his arrests and convictions. See, e.g., Read v. Town of Suffern Police Dept., 10 Civ. 9042 (JPO); Read v. Zugibe, 10 Civ. 8428 (WHP); Read v. Rockland County Jail RCCF Official Personels Responsible Per Evidence Certified to CT, 10 Civ. 9018 (LAP); Read v. Zugibe, 11 Civ. 1771 (LAP). Petitioner has submitted numerous documents which appear to relate to these other cases.

## III.  APPLICABLE LAW

-12-

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

A. Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction. See 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling,

-13-

which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Id. Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B. Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent. See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir.

-14-

2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  See Harris, 489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an

-15-

absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). In doing so, a petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d)

allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).  A habeas petitioner who fails to meet a

state's requirements to exhaust a claim will be barred from asserting that claim in federal court.

Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

      However, "[f]or exhaustion purposes, a federal habeas court need not require that a

federal claim be presented to a state court if it is clear that the state court would hold the claim

procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation

omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the

State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.

1991).  Such a procedurally barred claim may be deemed exhausted by a federal habeas court.

See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural

default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain

unreviewable by a federal court.

      When confronted with a "mixed" petition containing both exhausted and unexhausted

claims, a federal court has the following options: (1) it may stay the proceedings and hold the

petition in abeyance in order to permit the petitioner to return to state court and exhaust the

unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any

unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review

and deny a mixed petition containing both exhausted and unexhausted claims, if those

unexhausted claims are "plainly meritless."  See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544

U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374, 378-82 (2d Cir. 2001); Reyes v.

Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (Report and

Recommendation), *adopted by* 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[10]

D.   Standard of Review

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); see Bell v. Miller, 500 F.3d 149, 154-55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth [by the Supreme Court of the United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  "Clearly

---

[10]  Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court] decisions.  And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice."  <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  <u>Id.</u> at 1706-07 (quoting <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786-87 (2011)) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

　　　Finally, under the AEDPA, the factual findings of state courts are presumed to be correct.  <u>See</u> 28 U.S.C. §2254(e)(1); <u>see also</u> <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. §2254(e)(1).

## IV.  ANALYSIS

A.  <u>Claim One: Denial of Missing Witness Charge</u>

　　　Petitioner claims that the trial court erred in denying his request for a missing witness instruction as to Ms. Read.  This claim (as set forth in the petition) is exhausted, as it was presented to the state courts on direct appeal and was included in petitioner's leave application to the Court of Appeals.  However, this claim is based on state law, and does not raise any federal constitutional issue which is cognizable on habeas review.

　　　There is "no clearly established Supreme Court precedent requiring a trial court to

instruct the jury with respect to a missing witness." <u>Morales v. Strack</u>, No. 03-MISC-0066 (JBW), 2003 WL 21816963, at *4 (E.D.N.Y. July 3, 2003) <u>aff'd</u>, 116 F. App'x 293 (2d Cir. 2004). Instead, the decision of whether to give a missing witness charge is committed to the sound discretion of the trial court. <u>Reid v. Senkowski</u>, 961 F.2d 374, 377 (2d Cir. 1992). Accordingly, "[a] trial court's decision to deliver a missing witness instruction, like any jury instruction, does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the [decision] so infected the entire trial that the resulting conviction violated due process." <u>Watkins v. Perez</u>, No. 05 Civ. 477 (GEL), 2007 WL 1344163, at *21 (S.D.N.Y. May 7, 2007) (citations omitted).

Here, the missing witness instruction claim was presented to the state courts purely as a matter of state law, and the Appellate Division held that the trial court properly denied petitioner's request for a missing witness charge. <u>People v. Read</u>, 97 A.D.3d at 703. Petitioner did not present any alleged due process violation to the state court, nor has he done so here. Petitioner's missing witness charge claim should therefore be denied.

B. <u>Claim Two: Denial of Moral Certainty Charge</u>

Next, petitioner claims that the trial court erred in denying his request for a moral certainty charge. This claim is exhausted, as it was presented on direct appeal and was included in petitioner's leave application to the Court of Appeals. However, this claim was presented to the state courts purely as a question of state law, and does not raise any federal constitutional issue which is cognizable on habeas review.

"[T]here is no requirement that the phrase 'moral certainty' or any other particular words be used when instructing a jury on the meaning of proof beyond a reasonable doubt. In fact, the Supreme Court has cautioned against using the phrase 'moral certainty' when defining

-20-

reasonable doubt for jurors." <u>Corines v. Warden, Otisville Fed. Corr. Inst.</u>, No. 05-CV-2056 (NGG), 2008 WL 4862732, at *13 (E.D.N.Y. June 10, 2008) <u>report and recommendation adopted sub nom. Corines v. Superintendent, Otisville Corr. Facility</u>, 621 F. Supp. 2d 26 (E.D.N.Y. 2008) (citing <u>Victor v. Nebraska</u>, 511 U.S. 1, 16-17 (1994)).  In this district, "denial of the New York 'pattern jury instruction on moral certainty/circumstantial evidence [does] not abridge [a petitioner's] federal due process rights to a fundamentally fair trial.'" <u>Parson v. Superintendent of Fishkill Corr. Facility</u>, No. 12 CIV. 2358 JMF, 2013 WL 1953181, at *1 (S.D.N.Y. May 13, 2013) (citations omitted).  Petitioner has therefore failed to raise any federal claim by asserting that the court erred in failing to deliver a moral certainty charge to the jury.

This claim is procedurally barred as well.  The Second Department rejected petitioner's moral certainty charge claim on procedural grounds, and, alternatively, on the merits.  <u>People v. Read</u>, 97 A.D.3d 702, 703, 947 N.Y.S.2d 614 (2012).

New York's contemporaneous objection rule (codified at section 470.05(2) of New York's Criminal Procedure Law) "provides that, with a few exceptions . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." <u>Downs v. Lape</u>, 657 F.3d 97, 103 (2d Cir. 2011).  The record here reveals that at trial, Judge Nelson announced that he planned to charge circumstantial evidence.  (Tr. 9/23/10: 7).  Defense counsel inquired, "with regard to the burden of proof, would that be with moral certainty?" to which the trial judge said that counsel "will hear the instructions described by the criminal jury instructions on the issue of circumstantial evidence." (<u>Id.</u>).  The jury was charged in terms consistent with the New York

Criminal Jury Instructions without mention of moral certainty.[11]  (Id. at 43-46).  Neither counsel

had any requests or exceptions to the charge.  (Id. at 66).

On direct appeal, although the Second Department rejected petitioner's claims on the

merits, it also explicitly invoked an "independent" state procedural ground (New York's

contemporaneous objection rule) as a basis for its decision.  Where a state court has expressly

relied on a procedural default, federal habeas review is foreclosed even if the state court also

addressed the merits of the federal claim.  See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005)

(federal habeas review barred where state court held claim "not preserved for appellate review"

but then ruled on the merits of the claim "in any event").

The Second Circuit has consistently recognized New York's contemporaneous objection

rule as an independent and adequate state procedural rule barring habeas review.  See, e.g.,

Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); Brown v. Ercole, 353 F.App'x 518, 520 (2d

Cir. 2009); Garvey, 485 F.3d at 720; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (federal

courts "have observed and deferred to New York's consistent application of its contemporaneous

---

[11]   The Court notes that the New York Criminal Jury Instructions state that the
Circumstantial Evidence charge

> does not use the words 'moral certainty' which are no longer required in this
> state.  In the words of the Court of Appeals: 'While it is not necessary that the
> words 'moral certainty' be used, when the evidence is circumstantial the jury
> should be instructed in substance that it must appear that the inference of guilt is
> the only one that can fairly and reasonably be drawn from the facts, and that the
> evidence excludes beyond a reasonable doubt every reasonable hypothesis of
> innocence.'  People v Sanchez, 61 NY2d 1022, 1024 (1984); People v Ford, 66
> NY2d 428, 441-443 (1985).  See also People v Gonzalez, 54 NY2d 729 (1981).

*Criminal Jury Instructions of General Applicability: Circumstantial Evidence*, NEW YORK
STATE UNIFIED COURT SYSTEM,
http://www.nycourts.gov/judges/cji/1-General/CJI2d.Circumstantial_Evidence.pdf (last visited
Oct. 15, 2015).

objection rules"). Further, the Appellate Division's application of CPL 470.05(2) in this case was not exorbitant. As to the first *Cotto* consideration, it is "meaningless to ask whether the alleged procedural violation was actually relied on in the trial court–the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier." See Garvey, 485 F.3d at 719. Indeed, perfect compliance with CPL 470.05 would have given the trial court an opportunity to address head-on the issues petitioner now raises. The second *Cotto* consideration weighs against petitioner because New York case law requires compliance with the contemporaneous objection rule under the specific circumstances presented here. See, e.g., People v. Garcia, 79 A.D.3d 1248, 1251, 911 N.Y.S.2d 723, 726 (3d Dep't Dec. 9, 2010); People v. Belle, 74 A.D.3d 1477, 1480, 902 N.Y.S.2d 258, 261 (3d Dep't June 10, 2010); People v. Hernandez, 44 A.D.3d 1072, 844 N.Y.S.2d 398 (2d Dep't Oct. 30, 2007). The third *Cotto* consideration similarly disfavors petitioner because, just as in *Garvey*, petitioner did not simply violate the "formal requirements" of CPL 470.05(2), but rather "the very essence" of the rule. See Garvey, 485 F.3d at 720. Moreover, petitioner's compliance would have served a legitimate purpose in that "[a]t a bare minimum, the trial court could have developed a factual record supporting its decision[s] that could then properly be reviewed on appeal." See Whitley, 642 F.3d at 290.

Because there is an adequate and independent finding by the Appellate Division that petitioner procedurally defaulted on the moral certainty charge claim he presently asserts as grounds for habeas relief, petitioner must demonstrate in his habeas petition "either cause and actual prejudice, or that he is actually innocent." Gutierrez v. Smith, 702 F.3d 103, 111 (2d Cir. 2012) (quotation and citations omitted). Petitioner has failed to demonstrate cause and prejudice here and there is no indication that this Court's failure to address the merits of the unpreserved

-23-

claims would result in a fundamental miscarriage of justice. Therefore, even if petitioner

presented a cognizable claim, petitioner's procedural default would bar federal review of the

moral certainty charge claim.

Accordingly, I conclude, and respectfully recommend, that this claim should be denied.

C. Claim Three: Denial of the Motion for a Mistrial Based on Derisive Comments in the

Prosecutor's Summation

Petitioner asserts that the trial court erred in denying his motion for a mistrial based on

derisive comments in the prosecutor's summation and that the cumulative effect of the

prosecutor's improper comments during summation deprived petitioner a fair trial. (Dkt. 2 at 5).

Although petitioner pursued this claim at all levels of his state appeal, the claim was presented to

the state courts only as a matter of state law.

The only arguable reference to federal law or the constitution in petitioner's appellate

briefs was his allusion to a "fair trial":

> In People v. Spann, 82 A.D.3d 1013 (2nd Dept. 2011), this Court
> held that cumulative effect of the prosecutor's improper comments
> during summation deprived defendant of a fair trial.

(Exh. A at 25 [Appellate Division Brief]; Exh. E at 9 [Leave Application]). But the Second

Circuit has cautioned that the words "'fair trial' can be a catchphrase used by habeas petitioners

as part of an allegation about any type of trial court error, including errors in rulings based on

state law," and has noted more specifically that "[a]lleging lack of a fair trial does not convert

every complaint about . . . a prosecutor's summation into a federal due process claim."

Petrucelli v. Coombe, 735 F.2d 684, 688 (2d Cir. 1984) (citations omitted). Petitioner's bare

reference to a "fair trial" therefore cannot be said to have put the state courts on notice that they

were to decide a federal constitutional claim. See Carvajal, 633 F.3d at 104 (2d Cir. 2011). In

support of his claim, Petitioner relied on three state court cases (People v. Spann, 82 A.D.3d

1013 (2d Dep't 2011), People v. Pagan, 2 A.D.3d 879 (2d Dep't 2003), and People v. Torres,

111 A.D.2d 885 (2d Dep't 1985)), none of which employ constitutional analysis or apply federal

law.  (Exh. A at 25 [Appellate Division Brief]; Exh. E at 9 [Leave Application]).  Petitioner did

not assert this claim "in terms so particular as to call to mind a specific right protected by the

Constitution," nor did he allege "a pattern of facts that is well within the mainstream of

constitutional litigation."  Carvajal, 633 F.3d at 104 (2d Cir. 2011).  Thus, petitioner's reference

on appeal to a "fair trial" could refer simply to "state law rights" which are not cognizable on

habeas review.  Carr v. Fischer, 283 F. Supp.2d 816, 829 (E.D.N.Y. 2003).

To the extent that petitioner now seeks review of a parallel federal claim based on the

same set of facts asserted on appeal, any such claim is unexhausted but may be "deemed

exhausted" because it is procedurally barred under state law.  See St. Helen, 374 F.3d 181, 183.

Petitioner cannot again seek leave to appeal those claims in the Court of Appeals because he has

already made the one request for leave to appeal to which he is entitled.  See N.Y. Ct. Rules §

500.20(a)(2).  He is also precluded from raising the claim in a collateral proceeding because it

could have been raised on direct appeal to the Appellate Division, just as he raised the related

state law claim.  See N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner has not alleged that he is

actually innocent or that the court's failure to consider the claims would result in a fundamental

miscarriage of justice, and he has not claimed cause or prejudice.

Accordingly, petitioner's claim regarding the prosecutor's summation should be denied.[12]

---

[12]  Although I do not reach the merits of this claim, I note that the Second Department
determined that petitioner's state law claim, and presumably therefore any unarticulated federal
claim based upon the same facts, was inadequately preserved and thus procedurally barred.
People v. Read, 97 A.D.3d at 703 ("The defendant's contention, also with respect to the trial

D.  Claim Four: Invalidity of Order of Protection

Next, petitioner contends that his contempt conviction was based on an invalid order of

protection.  In essence, petitioner contends that Clarkstown Justice Victor J. Alfieri Jr., identified

as the signatory on the underlying August 30, 2006 order of protection, had been elevated to the

state supreme court by that date, and that the order is a "nullity" as a result.  (Dkt. 2 at 3, 9-11,

45-47; Dkt. 19 at 7).

This claim was not raised in state court at any level, and is therefore unexhausted.

Nevertheless, the claim is "deemed exhausted" because it is now procedurally barred under state

law.  See St. Helen, 374 F.3d 181, 183.  Petitioner cannot again seek leave to appeal those claims

in the Court of Appeals because he has already made the one request for leave to appeal to which

---

under Indictment No. 424/08, that certain statements made by the prosecutor during summation
constituted reversible error is unpreserved for appellate review.  Defense counsel either did not
object to the remarks at issue or made a general one-word objection, and his motion for a
mistrial, made after the completion of summations, was untimely.") (citations omitted).  The
Appellate Division relied on New York's contemporaneous objection rule which constitutes a
procedural default under New York law and an independent and adequate state procedural rule
barring habeas review in the Second Circuit.  "[T]he failure to object in a timely fashion to . . .
[a] prosecutor's summation as required by the New York state contemporaneous objection rules
constitutes a procedural default barring habeas review under Wainwright v. Sykes unless
[petitioner] can demonstrate cause and actual prejudice."  Cuevas v. Henderson, 801 F.2d 586,
589 (2d Cir. 1986) (citing Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d
783 (1982)).  See Garcia v. Graham, 07-CV-3790 (JG), 2008 WL 2949383 at *13 (E.D.N.Y. July
31, 2008) ("To the extent that [petitioner] here complains of other remarks by the prosecutor,
many such claims, would have been procedurally barred raised it on appeal [sic], as he largely
made only general one-word objections and his mistrial motion came belatedly at the end of the
government's summation.").  The Second Department explicitly invoked this rule as an
"independent" state procedural ground as a basis for its decision despite ruling on the merits of
the claim "in any event."  People v. Read, 97 A.D.3d at 703.  As explained above, petitioner has
neither demonstrated cause and prejudice nor has he claimed actual innocence, and there is
no indication that this Court's failure to address the merits of the unpreserved claims would result in
a fundamental miscarriage of justice.  Therefore, petitioner's procedural default provides an
alternative bar to federal review of the prosecutorial misconduct claim.

he is entitled.  See N.Y. Ct. Rules § 500.20(a)(2).  He is also precluded from raising the claim,

which amounts to a facial challenge to the underlying order of protection, in a collateral

proceeding because it could have been raised on direct appeal to the Appellate Division.  See

N.Y. Crim. Proc. Law § 440.10(2)(c).[13]

       Petitioner has not alleged that he is actually innocent or that the court's failure to

consider the claims would result in a fundamental miscarriage of justice.  Petitioner raises

ineffective assistance of trial counsel as cause for default of his claim that the order of protection

is invalid.  He says, "My attorney was ineffective by not using what I told him aboute [sic] the

nullity of the temporary restraining order.  All facts and documentation was given to trial

attorney Mr. Jeffery Shundrun [sic]."  (Dkt. 2 at 45).  However, because petitioner's ineffective

assistance of counsel claim is itself unexhausted, this cannot serve as cause for his procedural

default.  See Edwards v. Carpenter, 529 U.S. 446, 452 (2000); Murray v. Carrier, 477 U.S. 478,

488-89 (1986) (Exhaustion doctrine "generally requires that a claim of ineffective assistance be

presented to the state courts as an independent claim before it may be used to establish cause for

a procedural default.").[14]  Accordingly, petitioner's allegation regarding the validity of the order

_____

[13]  The New York Court of Appeals has indicated that the validity of the underlying order
of protection is an "element" of contempt which can be challenged in a pretrial motion or at trial,
People v. Konieczny, 2 N.Y.3d 569, 577 (2004), and that "it is incumbent upon the defense to
timely raise any issue relating to the validity of the order."  Id. n.3.  See also People v. Casey, 95
N.Y.2d 354, 360 (2000) (validity of order is "a matter to be raised as an evidentiary defense to
the contempt charge;" failure to raise the issue at trial precludes appellate review).

[14]  I do not construe petitioner's suggestion in passing that trial counsel was ineffective
for failing to challenge the validity of the order of protection as a freestanding claim upon which
petitioner seeks habeas relief.  The allegation appears in one sentence on page 45 of the 58 page
petition (exclusive of exhibits), and is not mentioned elsewhere in petitioner's voluminous
submissions.  I note, however, that any such freestanding claim is unexhausted, as it was not
presented to the state courts at any time in any manner.

of protection must be denied.

E.  Claim Five: Ineffective Assistance of Counsel

      Petitioner's submission can also be read to assert ineffective assistance of counsel based on his claim that his attorney should have sought a mistrial after the trial judge momentarily (and accidently) switched off the lights in the courtroom while leaning back against the wall.  This claim is unexhausted, as it is raised for the first time in the instant petition.  Petitioner claims that this occurred during Officer Beyer's cross- examination, (Dkt. 2 at 14), but the trial record is silent as to any such incident.

      Under New York's procedural rules, ineffective assistance of trial counsel claims based on errors or omissions that appear on the trial record must be raised on direct appeal or they will be deemed procedurally barred when raised collaterally.  See N. Y. Crim. P. L. § 440.10(2)(c) (court "must deny motion . . . [when] sufficient facts appear on the record" to permit review on direct appeal); Sweet v. Benton, 353 F.3d 135, 139 (2d Cir. 2003) (New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.").  Thus, record-based ineffective assistance claims not exhausted on direct appeal will be "deemed exhausted" on habeas review because they are procedurally barred under state law.  See St. Helen, 374 F.3d at 183.

      To the extent that this claim is considered record-based, it is deemed exhausted but procedurally barred because petitioner has already made the one request for leave to appeal to which he is entitled and is precluded from raising the claim in a collateral proceeding because it could have been raised on direct appeal to the Appellate Division.  See N.Y. Ct. Rules § 500.20(a)(2);  N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner has not alleged that he is actually

innocent or that the court's failure to consider the claims would result in a fundamental miscarriage of justice, nor does petitioner raise any cause for his procedural default, such as ineffective assistance of appellate counsel.[15]

To the extent that this claim is not record-based, however, it is unexhausted because petitioner has remedies available in state court. "To properly exhaust an ineffective assistance of trial counsel claim that relies on evidence outside the pretrial and trial record . . . the petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division." Carpenter v. Unger, Nos. 10-CV-1240, 12-CV-0957, 2014 WL 4105398, at *25 (N.D.N.Y. Aug. 20, 2014) (citation omitted).   In this scenario, the Court is confronted with  a "mixed petition," containing both this exhausted claim and petitioner's other unexhausted claims. See Rhines, 544 U.S. at 271. The Court may, however, review a mixed petition containing both exhausted and unexhausted claims if the unexhausted claims are "plainly meritless." See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277-78.  To the extent it is unexhausted, Petitioner's ineffective assistance claim premised on the courtroom lights incident is plainly meritless.

In order to establish his claim of ineffective assistance of trial counsel, petitioner must demonstrate (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, but for counsel's error, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668,

---

[15] In fact, petitioner praises appellate counsel in his petition, stating that "Mr. Robert, [sic] John Lewis is a very good lawyer who has assisted my research into my acknowledgment [sic] of the above brief [sic].  His work done has broaden other issues that supported how vindictive the prosecutors are to allude the true facts of the legal nullity of Case # 06050575." (Dkt. 2 at 46).

694 (1984).  "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).  In considering whether counsel's performance was deficient under *Strickland*'s first prong, decisions by trial counsel that "fall squarely within the ambit of trial strategy, . . . if reasonably made," cannot give rise to a claim of ineffectiveness.  United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987).  Moreover, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690).  The second prong focuses on prejudice to the petitioner.  A habeas petitioner bears the burden of establishing *both* deficient performance and prejudice.  See Greiner, 417 F.3d at 319.  Thus, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.

Here, petitioner has failed to suggest any reason why defense counsel had a duty – even if urged to do so by his client – to seek a mistrial based upon the momentary, accidental extinguishment of the courtroom lighting petitioner describes.  Even if it is true that, as petitioner claims, the jurors were startled when the lights went off, I cannot fathom why the jurors would have been prejudiced by this incident or would have held it against petitioner in their deliberations.  It seems clear that defense counsel understood, even if petitioner does not, that a criminal defendant "is entitled to a fair trial but not a perfect one."  Lutwak v. United States, 344 U.S. 604, 619 (1953).  Trial counsel "exercised sound professional discretion by declining to make . . . [a] plainly frivolous . . . motion[]."  United States v. Boothe, 994 F.2d 63, 69 (2d Cir. 1993), quoting United States v. Caputo, 808 F.2d 963, 967 (2d Cir. 1987).

-30-

Accordingly, to the extent that this claim is not procedurally barred, it is nonetheless subject to dismissal under 28 U.S.C. § 2254(b)(2) because it is plainly meritless.

F. Claim Six: Unfairness of Witness's Fist on Flesh Demonstration

Without specifying any particular legal claim under federal or state law, petitioner asserts that witness Paula Washington's demonstration of a "fist on flesh" sound was unfair to him. Although this issue was not identified as a claim on the habeas petition form, petitioner's accompanying submission addresses the episode at length.  (Dkt. 2 at 12, 26-28)  Accordingly, in the interest of affording petitioner a liberal reading of his pro se papers, I will analyze this as an independent claim.  Whatever claim petitioner wishes to assert regarding the "fist on flesh" demonstration, however, is unexhausted, because no such claim was raised on appeal.

At trial, Paula Washington testified that she heard the sound of a "fist on flesh" and demonstrated by striking her fist to her palm.  (Tr. 9/20/10: 19, 29-30).  On cross examination, the defense established that Ms. Washington did not include the phrase "fist on flesh" in her written deposition.  (Tr. 9/20/10: 49-51).  Notably, defense counsel did not object to the prosecution's request for Ms. Washington to do "a motion with your hands . . . again" on direct examination, and the record indicates that defense counsel even had Washington repeat the demonstration on cross.  (Tr. 9/20/10: 19, 49).

On appeal, petitioner's counsel described the "fist on flesh" testimony in the context of noting that Washington had omitted any reference to this sound in her contemporaneous written deposition.[16]  However, appellate counsel did not raise any claim regarding the "fist on flesh"

---

[16]  Petitioner's appellate brief states: "[Defense] counsel noted, witness Paula Washington, the Reads' landlady, had prepared what she called a 'deposition' the day after the incident, but in that written statement she never mentioned hearing a 'fist on flesh' sound, which somehow she was now remembering in her court testimony, some two years after the fact.

demonstration.  Accordingly, any claim petitioner now wishes to present for habeas review is unexhausted.

The claim may be "deemed exhausted", however, because it is procedurally barred under state law.  See St. Helen, 374 F.3d 181, 183.  Petitioner has already made the one request for leave to appeal to which he is entitled and is precluded from raising the claim in a collateral proceeding because it is record-based.  See N.Y. Ct. Rules § 500.20(a)(2); N.Y. Crim. Proc. Law § 440.10(2)(c).  Petitioner has not alleged actual innocence or that the court's failure to consider this claim would result in a fundamental miscarriage of justice, nor does he claim any cause for his procedural default.

Accordingly, I conclude and respectfully recommend that, to the extent petitioner's complaints regarding the "fist on flesh" evidence can be construed as a claim for habeas relief, the claim be denied.

----

Similarly, neither of the two policemen she had spoken to immediately after the incident remembered her saying any such thing, and they had not taken notes following their discussion with her."  (Exh. A at 10).

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).


Dated:   October 15 2015                                  Respectfully Submitted,
         White Plains, New York

                                                          _____
                                                          PAUL E. DAVISON, U.S.M.J.

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Kenneth Karas, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

       Requests for extensions of time to file objections must be made to Judge Karas.


A copy of this Report and Recommendation has been mailed to:

David Paul Read, 10-A-5909
Collins Correctional Facility
P.O. Box 340
Collins, NY 14034