UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

DAVID PAUL READ,

                    Petitioner,

   -v-

SUPERINTENDENT MR. THOMPSON, *Collins Correctional Facility*,

                    Respondent.

No. 13-CV-6962 (KMK) (PED)

ORDER ADOPTING REPORT &
RECOMMENDATION

Appearances:

David Paul Read
Sonyea, NY
*Petitioner*

Michelle Elaine Maerov, Esq.
Office of New York State Attorney General
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

      Petitioner David Paul Read ("Petitioner"), proceeding pro se, files this Petition for a Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction for aggravated criminal contempt, in violation of N.Y. Penal Law § 215.52(1), criminal contempt in the first degree, in violation of N.Y. Penal Law § 215.51(b)(v), and assault in the third degree, in violation of N.Y. Penal Law § 120.00(1). (*See* Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶ 4 (Dkt. No. 2); Resp't's Mem. of Law in Opp'n to the Pet. for a Writ of Habeas Corpus ("Resp't's Mem.") 1 (Dkt. No. 13).)

      The case was referred to Magistrate Judge Paul E. Davison, who issued a Report and Recommendation (the "R&R"), recommending that the Court deny the Petition. (*See* R&R (Dkt.

No. 42).) Petitioner subsequently filed timely objections to the R&R (the "Objections"), which the Court has considered. For the reasons stated herein, the Court adopts the R&R in its entirety and denies Petitioner's request for habeas relief.

## I. Background

The factual and procedural background of this case is set forth in the thorough R&R and the Court assumes the Parties' familiarity therewith. (*See* R&R 2–12.) The Court nevertheless summarizes the facts relevant to this Order.

On August 30, 2006, in the Town of Clarkstown Justice Court, Judge Victor J. Alfieri, Jr. issued a three-year order of protection (the "Order of Protection") that required Petitioner to refrain from engaging in "assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats, or any criminal offense" against his wife, Michelle Surdak Read ("Ms. Read"). (*See* Pet. Ex. 11; Sept. 17, 2010 Trial Tr. 46–51 (Dkt. No. 14).)[1]

By indictment number 424/2008 (the "Indictment"), a Rockland County grand jury charged Petitioner with aggravated criminal contempt, criminal contempt in the first degree, and assault in the third degree after Petitioner struck Ms. Read in the mouth. (Resp't's Mem. 1–2.) Petitioner's violation of the Order of Protection was the basis for the two contempt charges. On December 17, 2008, the County Court granted Petitioner's motion to dismiss the Indictment, but the Indictment was reinstated on appeal. *See People v. Read*, 896 N.Y.S.2d 912 (App. Div. 2010).[2] On September 24, 2010, a jury convicted Petitioner of all charges. (Sept. 24, 2010 Trial Tr. 3–6.) On December 15, 2010, the trial court sentenced Petitioner to concurrent prison terms

---

[1] All cited state court trial transcripts are filed at Dkt. No. 14.

[2] Petitioner had moved to dismiss the Indictment on the ground that the grand jury proceeding failed to conform with Article 190 of the New York Criminal Procedure Law. *Read*, 896 N.Y.S.2d at 912.

of three and a half years to seven years on the aggravated criminal contempt charges, two to four years on the first degree criminal contempt charge, and one year on the third degree assault charge. (Dec. 15, 2010 Sentencing Tr. 48–49.)[3]

Petitioner asserts that shortly after his conviction he attempted to file a motion to vacate the judgment under N.Y. Crim. Proc. Law § 440.10. He filed a letter to the Court attaching what he claims to be "the Rockalnd [sic] County Courts [sic] letter that is on [his] Habeas Petition as an [] Exhibit. Please be referred to this as my 440.10, 440.20 Motion." (*See* Letter from Petitioner to Court (Mar. 27, 2015) at unnumbered 1 (Dkt. No. 32).) Attached was a letter dated October 25, 2010 from the Rockland County trial judge's law secretary (the "October 25, 2010 Letter") which states: "I am returning your recently-submitted papers to you. In addition to the fact that your papers are deficient and the motion premature (you have not yet been sentenced), Judge Nelson will not entertain any pro se motions while you are represented by counsel." (*Id.* at unnumbered 2 (italics omitted).)

Petitioner also submitted pages from the Rockland County Court docket related to the Indictment. (*See* Dkt. No. 33.) As Magistrate Judge Davison noted, "[n]one of these documents [filed by Petitioner] establish whether [P]etitioner in fact filed, or attempted to file, a § 440.10 motion, nor do they shed light on what claims may have been presented therein." (R&R 5.) Regarding the latter point, Petitioner stresses that "all [the] claims argued in this Petition were argued in [his] sec. 440.10 [motion]." (Objection to R&R ("Pet'r's Obj's IV") 4 (Dkt. No. 60,

---

[3] Petitioner was sentenced on that same day for a criminal contempt conviction, arising from an April 27, 2009 incident involving Ms. Read. The two cases were consolidated for purposes of sentencing and appeal. Petitioner filed a separate habeas petition, docketed as *Read v. Thompson*, No. 13-CV-3661, challenging his conviction arising from the April 27, 2009 incident. That petition is addressed in a separate Report and Recommendation from Magistrate Judge Davison and will be dealt with by this Court in a separate order.

13-CV-3661 Dkt.).)  In any event, there is no indication that Petitioner ever sought any form of relief from the Appellate Division with respect to any such motion.

Petitioner, through his counsel, timely filed an appeal in the Appellate Division, Second Department. (*See* Answer in Opp'n to the Pet. for a Writ of Habeas Corpus ("Answer") Ex. A (Appellant's Br. on Appeal) (Dkt. No. 13).)  In this appeal, Petitioner raised the following arguments: (1) the trial court erred in denying Petitioner a "missing witness" charge with regard to Ms. Read; (2) the trial court erred in refusing trial counsel's request for a moral certainty charge; and (3) the trial court should have granted the defense's motion for a mistrial in light of derisive comments during the prosecutor's summation. (*Id.* at 17–27; *see also* Answer Ex. B (Br. for Resp't); Answer Ex. C (Appellant's Reply Br.).)[4]  On July 11, 2012, the Second Department affirmed Petitioner's judgment of conviction. *See People v. Read*, 947 N.Y.S.2d 614 (App. Div. 2012).  Petitioner, through his counsel, timely submitted an application for leave to appeal to the New York Court of Appeals, seeking review of the same arguments enumerated above. (Answer Ex. E (Appl. for Certification) 5–9.)  The Court of Appeals denied Petitioner leave to appeal. *See People v. Read*, 978 N.E.2d 113 (N.Y. 2012).

On or about September 30, 2013, the Petitioner, proceeding pro se, filed the instant Petition. (*See* Pet.)  The Petition expressly raised four grounds for habeas relief: (1) the trial

_____

[4] As noted by Magistrate Judge Davison, by submission dated February 18, 2014, Petitioner submitted a copy of a document entitled "Supplimental Breif" [sic], bearing the caption and docket number of his direct appeal; the cover letter provided to this Court describes the document as "tangible evidence of Petitioner's lay-person efforts to give a supplimentale [sic] brief to the appell[ate] court, as well as appellant[']s attorney." (Submission of Evidence at unnumbered 1, 8 (Dkt. No. 20).)  There is no indication that the document was actually submitted to or considered by the Appellate Division and even if it had been properly filed in connection with Petitioner's direct appeal, the document cannot be construed as having exhausted any additional claims because no corresponding application for leave to appeal was submitted to the New York Court of Appeals.

4

court erred in denying Petitioner a missing witness charge; (2) the trial court erred in denying

Petitioner a moral certainty charge; (3) the trial court erred in denying Petitioner's motion for a

mistrial based on derisive comments in the prosecutor's summation; and (4) the Order of

Protection, the violation of which served as the basis for the contempt charges, was not valid and

in effect when Petitioner assaulted Ms. Read. (Pet. ¶ 12.)  Magistrate Judge Davison liberally

construed the Petition to raise two additional claims: (1) trial counsel was ineffective for failing

to request a mistrial based on a purported incident during trial; and (2) the trial court improperly

permitted a witness to demonstrate what she described as a "fist on flesh" sound.  (R&R 8.)

Along with the Petition and his accompanying memorandum, Petitioner submitted over a dozen

exhibits.  (*See* Pet. 56–58.)[5]  Petitioner also filed myriad other documents of questionable

relevance and placed several calls to Magistrate Judge Davison's chambers, as thoroughly

detailed in the R&R.  (*See* R&R 8–12.)[6]  Respondent filed his response on January 30, 2014, (*see*

Resp't's Mem.), and Petitioner filed his reply on February 18, 2014, (*see* Pet'r's Reply to

Resp't's Answer ("Pet'r's Reply") (Dkt. No. 19)).

Magistrate Judge Davison issued the R&R on October 15, 2015, recommending that this

Court deny Petitioner's request for relief and dismiss the Petition in its entirety.  (*See* R&R 2.)

Petitioner requested an extension of time to submit his Objections to the R&R, which the Court

granted on October 27, 2015, providing a 30-day extension which rendered the Objections due

December 2, 2015.  (*See* Dkt. No. 43.)  Petitioner subsequently filed his Objections on a

---

[5] The Petition was filed on ECF as one main document, (*see* Dkt. No. 2), and one
attachment, (*see* Dkt. No. 2-1).  The Court's citations to specific pages are all contained in the
main document.  Because of otherwise inconsistent pagination throughout the document, the
citations correspond with the number electronically printed in the upper right hand portion of the
page (out of 66).  Citations to the Petition's exhibits span both documents.

[6] Petitioner also has placed several telephone calls to this Court's chambers.

piecemeal basis to this Court. (*See* Habeas Corpus Opp'n ("Pet'r's Obj's I") (Dkt. No. 45); Opp'n to R&R Final Briefing ("Pet'r's Obj's II") (Dkt. No. 46).)

Additionally, Petitioner asked the Court to incorporate objections from his other pending habeas petition, insofar as those objections address the missing witness charge claim and the Order of Protection claim. (*See* Pet'r's Obj's II at 1; *see also* Objection in Opp'n to the Writ of Habeas Corpus R&R ("Pet'r's Obj's III") (Dkt. No. 59, 13-CV-3661 Dkt.); Pet'r's Obj's IV.)[7]

Petitioner also filed with the Court of Appeals a petition for a writ of mandamus directing the Court to rule on his Petition. On September 21, 2015, the Second Circuit denied Petitioner's mandamus petition without prejudice, but nonetheless directed action by this Court within 30 days. (*See* Dkt. No. 36.) Subsequently, in connection with the same mandamus petition, the Second Circuit issued another order denying Petitioner's mandamus petition without prejudice. (*See* Dkt. No. 50.)[8]

## II. Discussion

### A. Applicable Law

#### 1. Standard of Review

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

---

[7] The document containing Petitioner's third set of Objections contains inconsistent pagination. (*See* Pet'r's Obj's III.) Citations to specific pages of this document refer to the page numbers electronically printed in the upper right hand portion of each page of the docketed version of the document.

[8] The Court understands Petitioner's legitimate desire to have his Petition adjudicated as quickly as possible. Nevertheless, as Petitioner points out, "[q]uick adjudication should not . . . be at the expen[s]e of a[] []complete review." (Pet'r's Reply 4.) Petitioner's filings in both of his habeas actions were extensive and disjointed, making review of his petitions particularly challenging. The Court has made its best effort to thoroughly review the filings and adjudicate the petitions in a timely manner.

magistrate judge." 28 U.S.C. § 636(b)(1).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of

Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and

recommendation.  The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and

must be made "[w]ithin 14 days after being served with a copy of the recommended disposition,"

*id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant

to Federal Rules of Civil Procedure 5(b)(2)(C)-(F), *see* Fed. R. Civ. P. 6(d), for a total of

seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

"A district court evaluating a magistrate judge's report may adopt those portions of the

report [and recommendation] to which no specific, written objection is made, as long as the

factual and legal bases supporting the findings and conclusions set forth in those sections are not

clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205,

206 (S.D.N.Y. 2012) (internal quotation marks omitted), *aff'd sub nom. Hochstadt v. N.Y. State

Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013).  In contrast, where a party timely submits objections

to a report and recommendation, as Petitioner has done here, the district court reviews de novo

the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b)(3).  "When a [petitioner] simply rehashes the same arguments

set forth in [his] original petition, however, such objections do not suffice to invoke de novo

review of the [r]eport." *Aponte v. Cunningham*, No. 08-CV-6748, 2011 WL 1432037, at *1

(S.D.N.Y. Apr. 11, 2011) (italics omitted); *see also Hall v. Herbert*, No. 02-CV-2300, 2004 WL

287115, at *1 (S.D.N.Y. Feb. 11, 2004) ("[T]o the extent that a party simply reiterates his

original arguments, the [c]ourt reviews the report and recommendation only for clear error.").

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those

drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in

the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam).

### 2. Habeas Corpus

#### a. Standard of Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even

8

if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

### b. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects important "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds*, *Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is

10

presented in a way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d

at 192, and the state courts are "apprised of both the factual and the legal premises of the claim

[the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997)

(alteration in original) (internal quotation marks omitted); *see also Bermudez v. Conway*, No. 09-

CV-1515, 2012 WL 3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same).  In other words, a state

prisoner need not cite "chapter and verse of the Constitution" to satisfy this requirement.  *Daye*,

696 F.2d at 194.  However, it is "not enough that all the facts necessary to support the federal

claim were before the state courts, or that a somewhat similar state-law claim was made."

*Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citation omitted).  Rather, the claims must be made in

such a way so as to give the state courts a "fair opportunity to apply controlling legal principles

to the facts bearing upon his constitutional claim."  *Id.* (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court,

and having been denied relief, the petitioner must have utilized all available mechanisms to

secure [state] appellate review of the denial of that claim."  *Klein*, 667 F.2d at 282; *see also*

*Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same),

*adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant

must first appeal his or her conviction to the Appellate Division, and then must seek further

review of that conviction by applying to the Court of Appeals for a certificate granting leave to

appeal."  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  If the petitioner fails to exhaust

his or her state remedies through this entire appeal process, he or she may still fulfill the

exhaustion requirement by collaterally attacking the conviction via available state methods.  *See*

*Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3

(S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4

(S.D.N.Y. Sept. 28, 2012); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006);

*Rivera v. Conway*, 350 F. Supp. 2d 536, 544 (S.D.N.Y. 2004). For example, in New York a

defendant may challenge the conviction based on matters not in the record that could not have

been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek

collateral review of claims that could have been raised on direct appeal and were not, *see id.*

§ 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7

(S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised

in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial

record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."),

*adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

In addition, New York permits only one application for direct review. *See* N.Y. Comp.

Codes R. & Regs. tit. 22, § 500.20(a)(2); *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006)

("[The petitioner] has already taken his one direct appeal [under New York law] . . . ."). "New

York procedural rules bar its state courts from hearing either claims that could have been raised

on direct appeal but were not, or claims that were initially raised on appeal but were not

presented to the Court of Appeals." *See Sparks*, 2012 WL 4479250, at *4. Accordingly, in those

situations, a petitioner no longer has any available state court remedy, and the unexhausted

claims are therefore deemed exhausted, but procedurally barred. *See Carvajal v. Artus*, 633 F.3d

95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state remedies by failing to

adequately present his federal claim to the state courts so that the state courts would deem the

claim procedurally barred, we must deem the claim procedurally defaulted." (alteration and

internal quotation marks omitted)); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)

(noting the reality that deeming an unpresented claim to be exhausted is "cold comfort"). A

dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Id.* "An

applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted

claim only by demonstrating 'cause for the default and prejudice' or by showing that he is

'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104

(quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) ("[A]

federal court will not entertain a procedurally defaulted constitutional claim in a petition for

habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that

the petitioner "is actually innocent of the underlying offense . . . .").

### B. Application

As mentioned above, Petitioner's Objections span multiple filings on multiple dockets.

They are lengthy, at times difficult to follow, and, for the most part, repeat the same arguments

put forward in his Petition, without addressing, or referring to, Magistrate Judge Davison's

recommendations. The Court construes Petitioner's principal objections to be that (1) Magistrate

Judge Davison failed to adequately consider his allegations of actual innocence, insofar as such a

showing can overcome procedural bars that Magistrate Judge Davison found prevent review of

some of Petitioner's claims, (*see, e.g.*, Pet'r's Obj's II at 1 ("I would also state [I am] pleading

actual innocence due to the information provided in all my document[a]ry submission[s].");

Pet'r's Obj's III at 3 ("My document[a]ry evidence support[s] my claims of innocence."); *id.* at 4

(noting that the evidence demonstrating his innocence is "before this Court[']s eye[]s" but

apologizing for the fact that the presentation of such evidence may have been confusing)), and

(2) Magistrate Judge Davison failed to sufficiently address the fact that Petitioner purportedly

filed a § 440.10 motion that covered the claims brought in his Petition. (Pet'r's Obj's IV at 1

("Petitioner objects to collateral attack of submitting N.Y.S. 440.10 Motion.").)[9]  Beyond these,

Petitioner's Objections consist of the same contentions made to Magistrate Judge Davison or

arguments related to new claims not raised in the Petition.  The Court will address those issues

after review of the actual innocence and § 440.10 motion objections.

### 1.  Actual Innocence

Petitioner contends that he has a "colorable claim of factual innocence," (Pet'r's Obj's III

at 11–12), because the Order of Protection was a nullity, (*id.* at 8–11).  In "extraordinary

case[s]," a court may review a procedurally defaulted habeas claim in order to avoid a

"fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *see also Doe v.*

*Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (explaining that in "extremely rare" cases, "a

petitioner may use his claim of actual innocence as a 'gateway,' or a means of excusing his

procedural default, that enables him to obtain review of his constitutional challenges to his

conviction" (internal quotation marks omitted)).  However, this exception is expressly limited to

situations where a petitioner presents a claim of actual innocence. *See Schlup*, 513 U.S. at 321

(noting that this exception is "explicitly tied" to the petitioner's innocence).  "[A] claim of actual

innocence must be both credible and compelling.  For the claim to be credible, it must be

supported by new reliable evidence—whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence—that was not presented at trial." *Rivas v.*

---

[9] The Court notes that the document containing Petitioner's main argument with respect
to the purported § 440.10 motion was filed in connection with his objections to Magistrate Judge
Davison's Report and Recommendation in his related habeas petition and not this Petition. (*See*
Pet'r's Obj's IV.)  However, considering Petitioner's request that the Court incorporate his
"missing witness charge" and "order of protection" arguments from papers filed in connection
with the other case, the Petitioner's pro se status, and the fact that he referenced the motion in
papers filed in this Action, the Court will also consider his objections as they relate to the
purported § 440.10 motion.

*Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (internal quotation marks omitted). "For the claim to be compelling, the petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . ." *Id.* (internal quotation marks omitted).

Petitioner attached over a dozen exhibits to his Petition, which he argues, "prove [that] the [O]rder of [P]rotection is a nullity of law." (Pet. 39.) These documents consist mostly of state court documents connected to the criminal case that resulted in the Order of Protection and other criminal cases brought against Petitioner. (*See id.* at 56–58, Exs. 1–17.) Included are, among other things, jail booking forms, (*see* Pet. Exs. 9, 10), domestic violence information forms, (*see* Pet. Exs. 6, 7), and a violation of probation order, (*see* Pet. Ex. 5). Petitioner contends that these documents conclusively establish that the Order of Protection was a legal nullity at the time of his arrest because (1) the actual judge presiding over his case did not sign the Order of Protection, and (2) the Order of Protection was no longer in force because the criminal proceeding that gave rise to the Order of Protection was no longer active. (*See, e.g.*, Pet. 35.) Because violation of an order of protection is a necessary element of aggravated criminal contempt and criminal contempt in the first degree, absent circumstances not applicable here, (*see* N.Y. Penal Law §§ 215.51, 215.52), Petitioner argues that the invalidity of the Order of Protection means he is actually innocent of those crimes, (*see* Pet'r's Obj's III at 8, 11).

First, the Court questions whether the documents provided by Petitioner qualify as the type of "new evidence" required to make Petitioner's claim "credible" under *Rivas*, given that there is no reason that the documents—mostly state court documents—would have been unavailable to Petitioner at trial. *See Tuitt v. Martuscello*, No. 12-CV-1003, 2013 WL 5508385, at *15 n.16 (S.D.N.Y. Oct. 3, 2013) (noting that "the definition of 'new' evidence remains an

15

open question in th[e] [Second] Circuit" and that other circuits have "split over whether the new evidence must have been 'unavailable' at the time of trial, or simply 'not produced' at that time"); *see also Bowman v. Racette*, No. 12-CV-4153, 2015 WL 1780159, at *3 (S.D.N.Y. Apr. 20, 2015) ("[T]he definition of 'new' evidence under the *Schlup* standard appears to be an open question in this Circuit."). Nevertheless, even considering these exhibits as "new evidence," Petitioner's actual innocence claim is far from "compelling." The Court has reviewed Petitioner's documentary evidence but finds no support for his assertion that the evidence clearly demonstrates that the "sig[]ning of th[e] [O]rder of [P]rotection was defici[e]nt," (Pet. 39), because Judge Alfieri, whose signature appears on the Order of Protection, did not actually sign the Order due to his having been recently elected to the Supreme Court of Rockland County, (*see, e.g., id.* at 43). The evidence provided does not effectively rebut the clear testimony provided at trial by Candyce Draper, the Chief Court Clerk of the Town of Clarkstown. Draper testified that she was present in court on August 30, 2006, when Judge Alfieri issued the Order of Protection. (*See* Sept. 17, 2010 Trial Tr. 46–51.) She further testified that Judge Alfieri was sitting in the courtroom that day, she recognized Judge Alfieri's signature on the Order of Protection, and the signature did not belong to any other judge that worked at the Clarkstown Justice Court. (*Id.* at 50.) She also testified that she remembered seeing Petitioner sign the Order of Protection and identified him in court during her testimony. (*Id.* at 51.)[10] Thus, Petitioner's first challenge to the validity of the Order of Protection fails.

---

[10] With respect to Petitioner's persistent focus on the fact that Judge Alfieri was elected to the Rockland County Supreme Court in 2006, (*see* Pet. 41 ("In 2006[,] as stated above[,] [Judge] Alfieri was elected to Supreme Court Justice in Rockland County. This was prior to the issuance of the [O]rder of [P]rotection."); *see also, e.g., id.* at 37, 39), the Court notes that the Order of Protection was ordered on August 30, 2006 but Rockland County appeared to hold its election for County Court in November of that year, after the Order of Protection was signed. *See* Sarah Netter, *Prosecutor, Public Defender to Fill County Bench Vacancies*, The Journal

16

Petitioner's second argument likewise fails. Petitioner appears to argue that the Order of Protection became a nullity when Petitioner was re-sentenced on the conviction resulting in the Order of Protection after pleading guilty to a separate charge. (*See* Pet. 38; *id.* at Ex. 1.) According to Petitioner, "[o]nce a defendant is [acquitted] or sent[e]nced, and [the] criminal action is no longer pending, any order of protection issued by [the] court . . . b[e]comes a mere [n]ullity." (Pet. 35; *see also* Pet'r's Obj's III at 9.) Petitioner cites to New York case law to support his argument. (*See, e.g.,* Pet. 48–52; Pet'r's Obj's III at 8–9.) But these cases, and Petitioner's argument, rely on N.Y. Crim. Proc. Law §530.13(1), which allows for the issuance of a *temporary* order of protection "as a condition of a pre-trial release, or as a condition of release on bail or an adjournment in contemplation of dismissal."[11] For example, in *People v. Bleau*, 718 N.Y.S.2d 453 (App. Div. 2001), the Third Department held that "the critical factor in issuing a *temporary* order of protection under CPL 530.13(1) is [the] defendant's status as a charged offender and the pendency of the action," and, thus, "[o]nce a defendant is acquitted or sentenced . . . the criminal action is no longer pending and, therefore, the temporary order of protection becomes a nullity." *Id.* at 454 (citation omitted).

News (Westchester County, N.Y.), June 21, 2006, at 12A ("[C]andidates [for the Rockland County Court] Charles Apotheker, Victor Alfieri Jr., William Warren[,] and Tom Walsh will face off in a *September* primary. Two will advance to *November's* general election." (emphases added)). Thus, Petitioner's claim that Judge Alfieri's election meant that he could not have signed the Order of Protection is belied by the facts.

[11] In 2007, the New York legislature amended the statute to expand the court's ability to issue a temporary order of protection "in conjunction with any securing order committing the defendant to the custody of the sheriff." 2007 N.Y. Sess. Laws Ch. 137 A. 8193 (McKinney).

N.Y. Crim. Proc. Law § 530.12(1) covers domestic violence crimes committed against family members, including spouses, and contains substantially similar language to § 530.13(1) regarding temporary orders of protection.

Here, it is apparent on the face of the Order of Protection that it was not a *temporary* order of protection issued under N.Y. Crim. Proc. Law § 530.13(1) or § 530.12(1). The Order contained two boxes: one for a "temporary order of protection," which itself contained further boxes allowing the judge to indicate whether the order was issued as a condition of recognizance, release on bail, or adjournment in contemplation of dismissal, and a second box for an "order of protection" issued because "defendant has been convicted" of a crime. (Pet. Ex. 11.)  Because the Order of Protection was issued after Petitioner was convicted of a crime, and not at the outset of criminal proceedings, the "order of protection" box is checked. (*Id.*)  Accordingly, the Order of Protection was not dependent on the pendency of any action, but rather was to be in effect until the date specified in the order, August 29, 2009. The Court cannot, therefore, conclude that "more likely than not, in light of the new evidence, no reasonable juror would find [Petitioner] guilty beyond a reasonable doubt," and thus Petitioner has not demonstrated "actual innocence" that would merit consideration of Petitioner's procedurally barred habeas claims. *Rivas*, 687 F.3d at 541 (internal quotation marks omitted).[12]

---

[12] Insofar as Petitioner advances a freestanding actual innocence claim as a ground for habeas relief, the Court notes that the Supreme Court "has never expressly held that a petitioner may qualify for habeas relief based solely on a showing of actual innocence." *Rivas*, 687 F.3d at 540 & n.34; *see also McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence.")  However, if a freestanding actual innocence claim could warrant habeas relief, Petitioner has failed to make such a showing because the threshold for "any hypothetical freestanding innocence claim [i]s 'extraordinarily high'" and such a showing requires "more convincing proof of innocence" than the showing of innocence necessary to satisfy *Schlup*. *House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). Because Petitioner fails to satisfy the *Schlup* standard, he cannot satisfy the more stringent requirements for any freestanding innocence claim.

## 2.  Purported § 440.10 Motion

In his Objections, Petitioner contends that he filed a motion under N.Y. Crim. Proc. Law § 440.10 that covered all the claims in his Petition. (*See* Pet'r's Obj's IV at 4.)  The Court notes that Petitioner was unable to provide a copy of the actual brief and none of the supporting documentation approaches establishing that he submitted such a motion, let alone that a brief contained arguments addressing all of the Petition's claims.  Thus, the Court will not allow Petitioner's mythical motion to cure any existing exhaustion deficiencies. *See Martin v. Jones*, No. 87-CV-3252, 1989 WL 94342, at *1–2 (S.D.N.Y. Aug. 4, 1989) (rejecting the petitioner's assertion that the district court should consider all of the petition's claims regardless of whether they were exhausted in state court where the petitioner's appellate briefs were lost and their contents were thus unknown).  However, even assuming that Petitioner did send the Rockland County Court a § 440.10 motion that covered all the claims included in his Petition and the motion was indeed the motion referred to in the October 25, 2010 Letter from the Rockland County judge's law secretary, the motion would do nothing to cure any exhaustion issues faced by Petitioner because any claims raised in that motion would not be exhausted until there was a decision on the § 440.10 motion and Petitioner sought leave to appeal a denial of the motion to the Appellate Division, neither of which occurred. *See, e.g.*, *Collazo v. Lee*, No. 11-CV-1804, 2011 WL 6026301, at *2 (E.D.N.Y. Dec. 2, 2011) ("[The] petitioner was required to seek leave to appeal the denial of his C.P.L. § 440.10 motion in order to fairly present the claim to the appropriate state court and exhaust state court remedies."); *Escalera v. Taylor*, No. 06-CV-13635, 2010 WL 307868, at *4 (S.D.N.Y. Jan. 25, 2010) (finding there was "no question" that petitioner's claims were unexhausted where the petitioner "challenged his re-sentencing in his

§ 440 motion, . . . [but] failed to seek leave to appeal the denial of that motion to the Appellate Division").

Further, Petitioner cannot use the October 25, 2010 Letter returning his purported § 440.10 motion to demonstrate "cause" for any of his procedural defaults. To demonstrate cause for a procedural default Petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with [New York's] procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Flores v. Rivera*, No. 06-CV-13517, 2009 WL 1110578, at *4 (S.D.N.Y. Apr. 23, 2009) (same). While cause can be demonstrated with a showing of "some interference by officials," such interference has to have "made compliance *impracticable*." *Id.* (emphasis added) (internal quotation marks omitted). The October 25, 2010 Letter returning Petitioner's purported motion did not make his compliance with § 440.10 impracticable. Rather, the Letter identified the deficiencies in Petitioner's filing, which, if anything, made it *easier* for Petitioner to re-file the motion at the appropriate time and thus ensure state review of his constitutional claims. At bottom, Petitioner's failure to follow through with his purported motion was a result of his own "[i]gnorance or inadvertence" which "will not constitute 'cause.'" *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993).

Accordingly, the Court rejects any objection by Petitioner based on his assertion that he filed a § 440.10 motion presenting all the claims in his Petition.

### 3. Moral Certainty Charge

In his Petition, Petitioner alleged that the trial court erred in refusing his counsel's request for a moral certainty charge because New York law requires the inclusion of such a charge when

the only evidence of a crime is circumstantial. (*See* Pet. ¶ 12(B); *see also id.* at 16, 23–25.)[13]

Petitioner's Objections do not specifically address any portion of Magistrate Judge Davison's

conclusion that the claim "does not raise any federal constitutional issue which is cognizable on

habeas review." (R&R 20.) Rather, the Objections merely reiterate Petitioner's argument that

he was entitled to a moral certainty charge because there was no direct evidence establishing that

Petitioner caused the victim's injuries. (*See* Pet'r's Obj's I at 1, 5–6.) Therefore, the Court need

only review Magistrate Judge Davison's conclusions with respect to this claim for clear error,

*see Cunningham*, 2011 WL 1432037, at *1, and finding no clear error, the Court adopts

Magistrate Judge Davison's findings with respect to this claim.

Even if the Court were to apply de novo review, its conclusion remains the same.

Magistrate Judge Davison correctly held that Petitioner's challenge fails to raise any federal

claim. (R&R 20–21.) *See Parson v. Superintendent of Fishkill Corr. Facility*, No. 12-CV-2358,

2013 WL 1953181, at *1 (S.D.N.Y. May 13, 2013) ("[D]enial of the New York pattern jury

instruction on moral certainty/circumstantial evidence does not abridge a petitioner's federal due

process rights to a fundamentally fair trial." (alterations, internal quotation marks, and italics

omitted)); *Corines v. Warden, Otisville Fed. Corr. Inst.*, No. 05-CV-2056, 2008 WL 4862732, at

*13 (E.D.N.Y. June 10, 2008) ("[T]here is no requirement that the phrase 'moral certainty' or

any other particular words be used when instructing a jury on the meaning of proof beyond a

reasonable doubt. In fact, the Supreme Court has cautioned against using the phrase 'moral

certainty' when defining reasonable doubt for jurors."), *adopted by* 621 F. Supp. 2d 26

---

[13] Under New York law, "[w]henever a case relies wholly on circumstantial evidence to
establish all elements of the charge, the jury should be instructed, in substance, that the evidence
must establish guilt to a moral certainty." *People v. Carter*, 948 N.Y.S.2d 608, 611 (App. Div.
2012) (internal quotation marks omitted) (quoting *People v. Daddona*, 615 N.E.2d 1014, 1015
(N.Y. 1993)).

(E.D.N.Y. 2008); *Francesehi v. Walsh*, No. 02-CV-2779, 2004 WL 1166650, at \*9 (E.D.N.Y.

May 24, 2004) (holding that the petitioner's "moral certainty" challenge was "not cognizable on

habeas review" (internal quotation marks omitted)).

     Also, as noted by Magistrate Judge Davison, review of Petitioner's moral certainty

charge claim is barred for the additional reason that the Second Department rejected the claim

based on an "independent and adequate state procedural rule," *Coleman v. Thompson*, 501 U.S.

722, 750 (1991), specifically that the claim was "unpreserved for appellate review," *Read*, 947

N.Y.S.2d at 616.[14] "The Second Circuit has determined that [New York's preservation rule] is

an independent and adequate state procedural ground" ordinarily barring habeas review. *Moore*

*v. Conway*, No. 08-CV-6390, 2010 WL 4117411, at \*7 (W.D.N.Y. Oct. 20, 2010), *aff'd*, 476 F.

App'x 928 (2d Cir. 2012); *see also Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) ("[The

Second Circuit] ha[s] held repeatedly that the contemporaneous objection rule is a firmly

established and regularly followed New York procedural rule."). Because of the independent

and adequate procedural grounds for rejecting Petitioner's claim, Petitioner must demonstrate in

his Petition "either cause and actual prejudice, or that he is actually innocent" to permit federal

review of his claim. *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012) (internal quotation

marks omitted). Petitioner has not demonstrated cause and prejudice and, as discussed above,

has not demonstrated that he is actually innocent of the crimes for which he was convicted.[15]

---

[14] Federal review is barred "even where," as here, "the state court has also ruled in the alternative on the merits of the federal claim." *Spurgeon v. Lee*, No. 11-CV-600, 2015 WL 4610021, at \*5 (E.D.N.Y. July 31, 2015) (internal quotation marks omitted) (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990)).

[15] Petitioner notes that "the procedural defaults and rules and laws[] [were] not familiar to [him]." (Pet'r's Obj's III at 2.) But as Petitioner himself concedes "that is not enough to use for [his] opposition motion." (*Id.* at 3.) Indeed, "Petitioner's allegation of ignorance of the law . . . [is] insufficient to allege adequate cause to excuse [a] procedural default." *White v. West*, No. 04-CV-2886, 2010 WL 5300526, at \*19 (E.D.N.Y. Dec. 6, 2010); *see also James*, 996

Therefore, as Magistrate Judge Davison concluded, "even if [P]etitioner presented a cognizable claim, [P]etitioner's procedural default would bar federal review of the moral certainty charge claim." (R&R 24.)[16]

### 4.  Missing Witness Charge

Petitioner claims that the trial court erred in denying his request for a missing witness instruction as to Ms. Read. (Pet. ¶ 12(A); *see also id.* at 18–23.) Magistrate Judge Davison concluded that the challenge "does not raise any federal constitutional issue which is cognizable on habeas review." (R&R 19.) Petitioner's Objections do not directly address Magistrate Judge Davison's conclusion. (*See* Pet'r's Obj's III at 15–20.) Instead, Petitioner contends that the trial judge "should of [sic] granted [Petitioner's] lawyer the charge missing witness," and notes that if Petitioner was "allowed the missing witness charge" the trial "would of [sic] greatly been different." (*Id.* at 16, 20.)[17] Having provided no specific objections to Magistrate Judge

---

F.2d at 1447 ("Ignorance or inadvertence will not constitute 'cause.'" (citing *Murray*, 477 U.S. at 491)); *Parker v. Wenderlich*, No. 14-CV-5896, 2015 WL 5158476, at *10 (E.D.N.Y. Sept. 2, 2015) ("[The petitioner's] lack of familiarity with the law is not sufficient cause to excuse [the petitioner's] default.").

[16] To the extent Petitioner's Objections can be construed as raising a separate claim that the jury charge was constitutionally defective because the charge "failed to inform jurors that they could individually consider mitigating circumstances and failed to instruct jurors regarding [the] effect of non-unanimity," (Pet'r's Obj's I at 2), or because of any other reason beyond the lack of a moral certainty charge, this claim was not raised on direct appeal and thus would be unexhausted. However, Petitioner's failure to include the argument in his direct appeal renders it procedurally barred under state law and so the Court "must deem the claim procedurally defaulted." *Carvajal*, 633 F.3d at 104 (alterations and internal quotation marks omitted); *see also Jimenez*, 458 F.3d at 149 ("[The petitioner] has already taken his one direct appeal [under New York law] . . . ."); *Gibbs v. New York*, No. 01-CV-5046, 2002 WL 31812682, at *2 (S.D.N.Y. Dec. 12, 2002) ("Any issue regarding the charge to the jury was apparent from the trial record, and could have been raised on direct appeal."). Because Petitioner has not demonstrated cause for the default and prejudice, or actual innocence, the Court is barred from reviewing the claim.

[17] Petitioner's general statement that he "would like to object to the missing witness count," (Pet'r's Obj's III at 15), does not qualify as a specific objection requiring the Court to

23

Davison's determination, the Court reviews the recommendation for clear error and finds that "the factual and legal bases supporting" the conclusion "are not clearly erroneous or contrary to law." *Adams*, 855 F. Supp. 2d at 206.

The Court notes that Petitioner's purported Objections addressing the missing witness charge claim contain a new list of constitutional rights of which Petitioner was apparently deprived at some point during his prosecution. (*See generally* Pet'r's Obj's III at 15–20.) For example, Petitioner states that he wanted to testify in his defense, that his lawyer was aware of that fact, and yet "nobody called [him] to the [] stand," amounting to ineffective assistance of counsel. (*Id.* at 15, 17.) Petitioner also hints at a claim that he was denied the right to compulsory process under the Sixth Amendment and that if he was merely provided "any hidden right" that this Court "deems fit," then his trial would have "greatly been different." (*Id.* at 18–20.) To the extent Petitioner seeks habeas relief on these claims, Petitioner's failure to raise them in his original petition (let alone on appeal in state court) precludes their consideration. *See, e.g., Davis v. Herbert*, No. 00-CV-6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008) ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the Court may not consider claims raised for the first time in the petitioner's objections . . . ."); *Gonzalez v. Garvin*, No. 99-CV-11062, 2002 WL 655164, at *1 (S.D.N.Y. Apr. 22, 2002) (rejecting objection containing ineffective assistance of counsel claim "because it was not raised in [petitioner's] original petition"); *McPherson v. Johnson*, No. 95-CV-9449,

---

engage in de novo review, *see Chiari v. N.Y. Racing Ass'n*, 972 F. Supp. 346, 351 (E.D.N.Y. 2013) ("Although the objections to a report and recommendation of a pro se party should be accorded leniency, even a pro se party's objections . . . must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." (first alteration in original) (italics and internal quotation marks omitted)). In any event, even a de novo review would yield the same conclusion.

1996 WL 706899, at *2 (S.D.N.Y. Dec. 9, 1996) ("[The] [p]etitioner cannot raise, in his objection to the [m]agistrate [j]udge's [r]eport, new claims not raised in his initial petition.").[18]

### 5. Derisive Comments

Petitioner also challenged his conviction on the grounds that the trial court should have granted his motion for a mistrial based on "derisive comments" in the prosecution's summation. (Pet. ¶ 12(C); *see also id.* at 25–32.) Magistrate Judge Davison concluded that the claim was unexhausted because Petitioner presented the claim to state courts only as a matter of state law, but that the claim could be deemed exhausted but procedurally defaulted because it would be procedurally barred under state law. (*See* R&R 24–25.) Petitioner's Objections addressing the derisive comments claim ultimately rehash the same arguments urged in support of the claim in his Petition and supporting papers, and argue that the prosecutor "used the word [distractions] . . . twice[] and [the] word diver[s]ion four times in the process of commenting on [the defense's] summation." (Pet'r's Obj's II 2–3; *see also* Pet. 25 ("Suffice it to say that the A.D.A. used the word '[d]istra[c]tions' twice, and the word '[d]iversions' four times in the process of commenting on defense counsel's summation.").)[19]  Petitioner lodges no specific

---

[18] Petitioner's Objections related to the missing witness charge claim were filed in connection with Magistrate Judge Davison's Report and Recommendation in Petitioner's related habeas petition, but Petitioner asked this Court to incorporate them into his Objections in the present Action. (*See* Pet'r's Obj's II at 1.) These Objections also contain a claim that Petitioner's trial lawyer was ineffective for "failure to disclose investigator reports" and "not using investigator report[] to impeach D.A." (Pet'r's Obj's III at 17.) The Court construes this "objection" as pertaining only to Petitioner's other habeas petition not at issue in this Order, because Petitioner expressly included a claim in that petition for ineffective assistance of counsel based on counsel's failure to "use[] the i[n]vestigator[']s report that defen[s]e tr[i]ed to get Michelle Read to testify," (*see* Am. Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ¶ 12 (Ground Four) (Dkt. No. 13, 13-CV-3661 Dkt.)), but not in the present Petition. In any event, even if Petitioner sought to add that claim in this Action, it too must be rejected as it was not included in the instant Petition.

[19] Indeed, at least one portion of the Objections matches almost word for word a portion of the papers filed in support of the Petition. (*Compare* Pet'r's Obj's II at 4, *with* Pet. 32.)

25

objection to Magistrate Judge Davison's determination that the claim is unexhausted because he failed to present his claim to the state courts as a federal claim. (*See generally* Pet'r's Obj's II at 2–7.) The Court, upon review of the R&R, finds that "the factual and legal bases supporting" this threshold issue "are not clearly erroneous or contrary to law." *Adams*, 855 F. Supp. 2d at 206.[20]

Even if the Court reached the merits of Petitioner's claim, the claim would be denied. Habeas relief is warranted only if the prosecutor's statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Bowman v. Racette*, No. 12-CV-4153, 2015 WL 1787130, at *21 (S.D.N.Y. Apr. 20, 2015) ("[I]n *Donnelly*, the Supreme Court instructed federal courts reviewing habeas petitions to distinguish between 'ordinary trial error of a prosecutor and that sort of egregious misconduct . . . [which] amount[s] to a denial of constitutional due process.'" (alterations in original) (italics omitted) (quoting *Donnelly*, 416 U.S. at 647–48)). The Court finds that the prosecutor's references to defense counsel's "diversions" and "distractions" fall far short of the type of egregious misconduct necessary to violate due process. Indeed, "[t]he prosecutor can properly ask the jury not to be side-tracked by certain evidence and certain issues [and] to focus on the issues that make out the prosecution's

---

[20] As Magistrate Judge Davison noted, the Appellate Division's determination that any challenge to the prosecutor's comments during summation was unpreserved for review provides an alternative bar to federal review of the derisive comments claim. (*See* R&R 25 n.12.) *See also Garcia v. Graham*, No. 07-CV-3790, 2008 WL 2949383, at *13 (E.D.N.Y. July 31, 2008) ("To the extent that [the petitioner] complains of other remarks by the prosecutor, many such claims[] would have been procedurally barred [if] raised . . . on appeal, as he largely made only general one-word objections and his mistrial motion came belatedly at the end of the government's summation."); *Charlemagne v. Goord*, No. 05-CV-9890, 2008 WL 2971768, at *6–7 (S.D.N.Y. June 30, 2008) (finding the petitioner's prosecutorial misconduct claim procedurally defaulted where the Appellate Division denied the claim based on New York's contemporaneous objection rule), *adopted by* 2011 WL 2150646 (S.D.N.Y. May 31, 2011).

case." *Garcia v. Greiner*, No. 01-CV-2470, 2004 WL 943902, at *7 (E.D.N.Y. Apr. 28, 2004);

*see also Pocesta v. Bradt*, No. 11-CV-916, 2012 WL 4503432, at *10 (E.D.N.Y. Sept. 27, 2012)

(finding that the petitioner was not denied a fair trial because the prosecutor's "rhetorical

flourishes were an appropriate attempt to bring the jury's attention away from speculation about

what evidence could have been collected against [the] petitioner, to the evidence actually

presented at trial" (internal quotation marks omitted)); *Cheng Kang Shi v. Connolly*, No. 06-CV-

2093, 2007 WL 4380276, at *14 (E.D.N.Y. Dec. 13, 2007) (rejecting claim that the prosecutor

"denigrated the role of defense counsel" when the prosecutor argued that the defense

"attempt[ed] to divert [the jury's] attention," because the statement "merely emphasiz[ed] that

the prosecution and defense sought to have the jury draw different conclusions from the evidence

presented"); *cf. United States v. Resto*, 824 F.2d 210, 213 (2d Cir. 1987) (finding that

prosecutor's remarks referring to defense tactics as "slick bits" and "slyness," and that defense

counsel engaged in "sleight-of-hand" and "tried to pull the wool over the jury's eyes," while

improper, "were not . . . so egregious as to warrant reversal" (internal quotation marks omitted)).

Accordingly, the state court's denial of Petitioner's motion for a mistrial due to the prosecutor's

summation was not "contrary to," nor did it involve, "an unreasonable application of, clearly

established federal law." *Epps*, 687 F.3d at 50 (internal quotation marks omitted).[21]

---

[21] Petitioner's Objections contain a collection of certain things a prosecutor cannot say or do during summations, including, among other things, commenting on a defendant's failure to testify, referring to evidence not in the record, interjecting personal opinion concerning the veracity of witnesses, and appealing to a jury based on passion and prejudice. (*See* Pet'r's Obj's II at 4, 6–7.) Petitioner also describes the prosecutor as "ambitious, aggressive, adversarial, and biased" and questions whether the prosecutor strayed from his responsibility to ensure that "justice shall be done." (*Id.* at 5.) However, Petitioner points to no other portion of the summation, (*see generally* Sept. 23, 2010 Trial Tr. 22–35), or trial transcript to support these rambling assertions. The only specific conduct Petitioner challenges is the prosecutor's use of the words "distraction" and "diversion" in his summation.

6. Invalid Order of Protection

As discussed above, Petitioner contends that the Order of Protection he was convicted of

violating was a nullity. (Pet. ¶ 12(D).) Magistrate Judge Davison concluded that the Court

cannot review the claim because it is unexhausted but deemed exhausted and procedurally

defaulted because it is now procedurally barred under state law. (R&R 26–28.) Petitioner's

Objections generally reiterate Petitioner's contention from his Petition that his plea in a different

case rendered the Order of Protection null and void because the Order was "predicated upon the

court's continuing jurisdiction over the ac[c]used." (Pet'r's Obj's III at 9–10; *see also id.* at 8

(noting that the "[e]vidence submitted in [his] habeas [Petition] proves [the] nullity of [the Order

of Protection]").) Construing his Objections liberally, the Court finds that Petitioner objects to

Magistrate Judge Davison's recommendation on the grounds that he argued that the Order of

Protection was a nullity at trial, thus exhausting the claim. (*See id.* at 13.)[22] Petitioner himself

concedes that any claim about the validity of the Order of Protection "was not [made] in the

appellate court." (*Id.* at 12–13.) Because Petitioner "must have utilized all available

mechanisms to secure [state] *appellate review* of the denial of th[e] claim," *Klein*, 667 F.2d at

---

[22] Petitioner appears to be referring to the following exchange with the trial judge, outside
the presence of the jury:

THE DEFENDANT: I have a problem with order of protection, the authenticity of the
signature. I have here it is Judge Alfieri's signature. I'm just—the investigator he has is not
going to be able to check out the signature. Back in 2006 was Judge Ugell. Just really stuck on
that. His signature doesn't even match up to this signature.

THE COURT: Do you want to take the witness stand and tell the jury that?
THE DEFENDANT: I want to tell the jury nothing.
THE COURT: Take it up with [defense counsel]. You got to talk to [defense counsel],
Mr. Read.
THE DEFENDANT: It says I did time on it and all that. That's not been investigated.

(Sept. 20, 2010 Trial Tr. 146.)

282 (emphasis added), Petitioner's claim is unexhausted. Aside from his actual innocence claim discussed above, Petitioner does not object to Magistrate Judge Davison's conclusion that the claim should be deemed exhausted because it is procedurally barred. The Court finds no error, clear or otherwise, with respect to this determination and thus adopts the recommendation and denies Petitioner's claim.[23]

### 7. Remaining Claims

Magistrate Judge Davison construed the Petition as raising two additional claims: an ineffective assistance of counsel claim with respect to a courtroom incident involving the inadvertent flipping off of a light switch and a claim challenging the trial court's allowance of testimony by a witness as to the sound of "fist on flesh." (R&R 8.) Petitioner's Objections do not specifically address these claims. The Court has reviewed Magistrate Judge Davison's determination with respect to the two claims and finds no error in them. The Court thus adopts those recommendations.[24]

---

[23] Moreover, for the reasons noted above, Petitioner has not demonstrated that the Order of Protection was invalid.

[24] While Petitioner does not object to Magistrate Judge Davison's findings recommending denial of his ineffective assistance of trial counsel claim as it pertains to the inadvertent extinguishment of the courtroom's lights, the Court notes that Petitioner does appear to try to add an otherwise never-raised ineffective assistance claim in the midst of his moral certainty charge argument. (*See generally* Pet'r's Obj's I at 2–6.) Petitioner hints at a number of deficiencies, but only in conclusory terms. Specifically, Petitioner notes: (1) that "[t]rial counsel did not file any pretrial motion[s] in this [I]ndictment," (*id.* at 2), or "request a motion for pre-trial proceedings . . . by which one party gains information held by another," (*id.* at 6), (2) that it was "defen[s]e counsel's responsibility to insure that mitigating considerations are presented to [the] sent[e]ncing authority in [a] criminal case," (*id.* at 4), and (3) that "trial attorn[e]y did [not] request a pre-trial discovery," (*id.* at 6). Because these claims were not raised in the Petition, and especially given the conclusory and vague nature of the new claims, Petitioner is not entitled to review of them here. *See, e.g., Davis*, 2008 WL 495316, at *1 ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the Court may not consider claims raised for the first time in the petitioner's objections . . . .").

29

III.  Conclusion

The Court adopts Magistrate Judge Davison's R&R.  Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the case.

SO ORDERED.

DATED:      January _13_, 2016
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE